# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| TONYA R., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 19-cv-2374 |
| v. | ) | |
| | ) | Magistrate Judge |
| ANDREW SAUL, Commissioner of Social Security, | ) | Susan E. Cox |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER

Plaintiff Tonya R. ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Defendant," or the "Commissioner") to deny her application for disability benefits. For the following reasons, the Commissioner's motion is denied [dkt. 20], Plaintiff's motion is granted [dkt. 14],[1] and the Administrative Law Judge's decision is reversed and remanded for further proceedings consistent with this opinion.

## STATEMENT

On August 12 2015, Plaintiff filed claims for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act") with an onset date of May 25, 2012. (R.18.) The claim was denied initially and upon reconsideration, after which Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on December 12, 2017. (R. 18.) On March 26, 2018, the ALJ denied Plaintiff's claim, finding her not disabled under the Act and therefore ineligible for benefits. (R. 18-40.) The Social Security Administration Appeals Council then denied Plaintiff's request for review on February, 7, 2019

---

[1] The Court construes Plaintiff's Memorandum in Support of Remand [14] as a motion for summary judgment.

(R.1-4), leaving the ALJ's decision as the final decision of the Commissioner, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

For the purposes of this opinion, the Court will focus on the Plaintiff's mental health and social history, as her physical ailments are not pertinent to the Court's decision. Among the issues reflected in Plaintiff's medical record are ongoing problems with alcohol abuse and bi-polar disorder. These conditions predictably lead to social conflict that will be discussed more fully below. Plaintiff began treating with Chevonne L. Toney, LCPC, in January 2014, and continued seeing Ms. Toney through July 2015. (R. 517-542.) Ms. Toney's treatment notes reflect that Plaintiff struggled with anger issues, including fights with her boyfriend and landlord (R. 520), extreme agitation (R. 521), fights with her sister and sister's boyfriend (R. 523, 524), becoming "easily agitated" due to her neighbor's children not cleaning up after their dog (R. 525), ongoing problems controlling her anger (R. 528), verbal altercations with "a manager at McDonalds about problems with an online application and receiving sales calls for other things" (R. 529), and spending time in an empty attic room to "organise her thoughts" (R. 529). The treatment records also reflect significant instability in Plaintiff's housing situation, such as being evicted (R. 541), leaving her home to live with an aunt because "she doesn't feel comfortable in her own home," and her landlord selling a building she was living in leading to fear "of being homeless." (R. 525.)

On December 29, 2015, Ms. Toney wrote a letter stating that Plaintiff "presented with severe Anxiety and some symptoms associated with Bipolar Disorder." (R. 517). Ms. Toney noted that Plaintiff's experience with significant past trauma "may have attributed to difficulty dealing with others in social settings [and] have made her unequipped to maintain employment."

(R. 517.)  She continued "[Plaintiff] has episodes of angry outburst, anxiety, is very disorganized and has great difficulty in doing what is needed to maintain employment (maintaining appropriate hygiene, adhering to schedules, understanding instructions easily etc)," and concluded that "it will be very difficult for her to learn a skill and work with others to assist her in locating and maintaining employment."  (R. 517.)

The administrative record also demonstrates that Plaintiff had two inpatient hospitalizations in 2016 due to her mental disorders.  Plaintiff was hospitalized at Presence St. Mary Hospital from August 8 through August 14, 2016, and diagnosed with bipolar disorder.  (R. 851-52.)  On presentation, Plaintiff complained of "increasingly aggressive behavior, depression, and impulsivity," and she was having "increasing verbal altercations with her boyfriend at home, whom she lives with and is afraid she may not be able to control her emotions, and may hurt someone or herself."  (R. 853.)

Plaintiff was again admitted to Presence St. Mary from October 28, 2016 to November 3, 2016.  She was admitted because she had homicidal ideations related to the neighbors in the shelter where she was living, and diagnosed with schizoaffective disorder.  (R. 895.)  The hospital noted that inpatient hospitalization was needed because "multiple attempts at outpatient have not been successful, inability to care for self due to mental illness."  (R. 895-906.)

The records also show that Plaintiff was homeless for almost all of 2016 and 2017.  On December 1, 2016, Plaintiff was referred to Teresa Castellanos, LCSW, by Plaintiff's primary care physician, Dr. Bridget Nord, M.D. (R. 1011.)  Ms. Castellanos noted that Plaintiff was "currently homeless and living in the shelter." (R. 1011.)  Plaintiff stated that she was "looking for a psychiatrist" to help her obtain medication for her bipolar disorder.  (R. 1011.)  Plaintiff reported that she had an aunt who would help her with a shower or occasional meal, and Ms.

Castellanos listed "homeless, limited support system" under the heading "stressors." (R. 1012.) At her next appointment with Dr. Nord on January 6, 2017, she wrote that Plaintiff "is homeless and sleeping in abandoned buildings with her boyfriend." (R. 1014.) As of February 22, 2017, Plaintiff was still homeless, but working on getting housing. (R. 1018.) As of April 2017, Plaintiff had moved in with a girlfriend. (R. 1023.) At her hearing before the ALJ, Plaintiff testified that she had been homeless since July 2016, but would occasionally be allowed to stay at the house of friends or family. (R. 69.)

The ALJ issued a written decision on March 26, 2018, following the five-step analytical process required by 20 C.F.R. § 416.920. (R. 18-40.) At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since August 12, 2015. (R. 20.) At step two, the ALJ concluded that Plaintiff has the severe impairments of alcohol abuse, morbid obesity, asthma, anxiety, and bipolar condition. (R. 20.) At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of a listed impairment. (R. 28.) The ALJ next found that Plaintiff retains the Residual Functional Capacity ("RFC") to perform sedentary work with the following restrictions: "stand/walk two hours of eight and sit hours of eight; lift/carry 20 pounds occasionally and 10 pounds frequently; stoop, crouch, bend occasionally; never kneel or crawl; employ the bilateral upper extremities without limitation; never work on ladders, ropes, or scaffolds or unprotected heights; work with unlimited balance; work without environmental limitations except should avoid concentrated exposure to extremes of heat; perform simple, repetitive tasks; perform uncomplicated, low stress, end of the day production work; work with occasional contact with coworkers and supervisors and no public contact but for incidental contact; and take public

transportation, feed, dress, bathe self and engage in personal hygiene work without work attendance deficits." (R. 30.)

At step four, the ALJ concluded that Plaintiff has no past relevant work. (R. 28.) At step five, however, the ALJ determined that, in light of Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that she can perform, such as inspector, system surveillance monitor, and bonder. (R. 39-40.) These findings led to the conclusion that Plaintiff is not disabled as defined by the Act. (R. 40.)

In reaching his decision, the ALJ determined that Plaintiff's claims were only "slightly consistent." (R. 21.) In concluding his finding about the consistency of Plaintiff's claims, the ALJ stated:

> Doctors have informed her, as she had admitted that she has to stop drinking. In essence, she is continuously noncompliant. The claimant contends that she has a severe mental health impairment, but has inconsistently has not had any medication management or psychotherapy in the last two and a half years."

(R. 26.)

This was a regular theme in the ALJ's opinion. Later in the opinion, he noted "[Plaintiff] has been prescribed with Abilify but <u>had not been taking it for over two years</u>" and "[Plaintiff] was prescribed Haldol and Ativan, <u>but apparently never took it outside the hospital</u>." (R. 36 (emphasis in original).) He concluded by stating that Plaintiff "was supposed to go to Mount Sinai Psychiatric and Behavioral Health and Heartland Alliance for medication management, but there is no indication that she ever did so." (R. 36.) However, when Plaintiff testified that she had not had psychiatric treatment for two years at the hearing, the ALJ did not question any of the reasons for that gap in treatment.

5

## DISCUSSION

### I.  Standard of Review

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "reasonable minds could differ" as long as "the decision is adequately supported") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007). "An ALJ has a duty to fully develop the record before drawing any conclusions .

. . and must adequately articulate his analysis so that we can follow his reasoning." *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

## II.     The ALJ Failed to Discuss Plaintiff's Reasons for Not Seeking Treatment

Plaintiff argues that the ALJ performed a flawed analysis of the consistency of her statements, and the Court agrees. The Social Security Administration (the "Administration") has clarified its sub-regulatory policies about symptom evaluation, eliminating the term "credibility" to emphasize that "subjective symptom evaluation is not an examination of the individual's character." *See* SSR 16-3p, 2016 WL 1119029 at *1 (effective March 28, 2016). SSR 16-3p provides guidance in the application of 20 C.F.R. § 404.1529, which states that the Administration "will carefully consider" information it has about the claimant's symptoms, including information about medications and treatments. According to SSR 16-3p, the Administration may not use the failure to pursue treatment as a reason for discounting an individual's claims regarding symptom intensity, persistence, and limiting effects "without considering possible reasons he or she may not . . . seek treatment consistent with the degree of his or her complaints." SSR 16-3p at *8. The ruling states that the Social Security Agency will consider and address reasons for not pursuing treatment that are pertinent to an individual's case. SSR. 16-3p at *8. The ALJ must then, while evaluating symptom severity, "explain how [he] considered the individual's reasons" for not seeking treatment, doing so in a manner sufficient to allow the Court to trace the path of his reasoning. *Id.; see Carlson v. Shalala,* 999 F.2d 180 (7th Cir. 1993.) Notably, the ALJ has a duty to adequately develop the record before drawing any conclusions. *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007).

In this case, the ALJ relied heavily on Plaintiff's failure to seek psychiatric treatment in 2016 or 2017 as part of his conclusion that Plaintiff's "statements regarding the intensity,

persistence, and limiting effects of symptoms [were] slightly consistent." (R. 21.) However, the ALJ did not address the effect that Plaintiff's homelessness and housing instability may have had on her failure to pursue treatment, and did not develop the record at the hearing at all on this issue. It seems clear to the Court that an overriding factor in the longitudinal record shows that Plaintiff had little to no stability in her housing. Her records shows that she was evicted or threatened to be evicted from two homes, lived in shelters for some time, was homeless and living in abandoned buildings for a period in 2016 and 2017, and testified that she had been homeless between July 2016 and the administrative hearing on December 12, 2017. It is equally obvious to the Court that such a situation would have the potential to affect an individual's ability to seek and receive treatment with any regularity. If one is consistently preoccupied with the basic human need for shelter, it stands to reason that other needs may be harder to satisfy or prioritize.

At the hearing, the ALJ was presented with testimony that demonstrated Plaintiff had not had psychiatric treatment for several years, but was also homeless during that same time period. If the ALJ planned to rely on the failure to seek treatment in his analysis, he had an independent duty to develop the record to consider whether that treatment gap was caused by Plaintiff's homelessness, and his failure to do so violates SSR 16-3p and requires remand. To be clear, the Court is not suggesting that the ALJ should make any specific findings about the effect of Plaintiff's homelessness on her failure to seek psychiatric treatment, but not considering it at all is error, particularly when the ALJ so forcefully cited Plaintiff's lack of recent treatment in his discussion of Plaintiff's consistency. Because this matter must be remanded to rectify that error, the Court forms no opinion as to the merits of any of Plaintiff's other arguments at this time.

## **CONCLUSION**

For the foregoing reasons, this decision of the ALJ is reversed and remanded for proceedings consistent with this opinion.

Date: 4/6/2020          _____

**U.S. Magistrate Judge, Susan E. Cox**